**COLLINS et al. v. MEGASON.  (No. 2352.)**

(Court of Civil Appeals of Texas. Texarkana. Feb. 9, 1921. Rehearing Granted Feb. 24, 1921.)

1. **Adverse possession ⊜117—Findings that both plaintiffs and defendant acquired title held not contradictory.**

In trespass to try title, findings that both plaintiffs and defendant acquired title by adverse possession were not contradictory the evidence showing that, after plaintiffs acquired title under the ten-year statute, their possession ceased, and defendant acquired title under the five-year statute.

2. **Adverse possession ⊜116(4)—Instruction defining "peaceable possession" held correct.**

An instruction defining "peaceable possession" as that which is continuous and not interrupted by adverse suits, being within the language of Vernon's Sayles' Ann. Civ. St. 1914, art. 5680, is correct.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Peaceable Possession.]

3. **Adverse possession ⊜46—Interruption occurs where adverse claimant recognizes title of disseisee.**

Where the adverse claimant recognizes the title of the disseisee, an interruption of his possession occurs which stops the running of limitations, as possession to ripen into an adverse title must be continuous.

4. **Adverse possession ⊜116(4)—Refusal of request presenting interruption by recognition of title paramount error.**

Where the pleadings and testimony present an issue of whether adverse claimant recognized title paramount, it is error to refuse a requested correct special charge to the effect that such recognition would stop the running of limitations, when the cause was submitted on a general charge.

5. **Adverse possession ⊜116(4)—Pleadings held to present the issue of defendant's recognition of title paramount.**

In trespass to try title, where defendant relied on adverse possession, pleadings *held* to present the issue whether he recognized plaintiff's paramount title.

6. **Trial ⊜261—Incorrect special charge may be refused where the general charge is correct as far as it goes.**

When the court instructs the jury with reference to an issue, and the instruction is

correct so far as it goes, it is not error to refuse an incorrect requested special charge, intended to instruct them fully with reference to such issue.

**7. Adverse possession ⚖57—Evidence held to show possession for the five-year period.**

In trespass to try title, where defendant relied on adverse possession, evidence *held* sufficient to warrant finding that his possession was continuous, and that the breaks were no greater than were reasonably required for change in tenants, and that therefore the possession was continuous.

#### On Motion for Rehearing.

**8. Adverse possession ⚖50—Trial ⚖194 (10)—Recognition of title of former owner breaks continuity; requested charge on recognition of title not on weight of evidence.**

In trespass to try title, where the pleadings and evidence raised the question whether defendant, by recognizing plaintiff's title, broke the continuity of his possession, so that the running of limitations was stopped, a requested special charge to find against defendant if he stated to plaintiff that he knew her father's heirs owned the land, or if defendant made any statement to the effect that he did not claim the land adversely, was improperly refused, being correct and not open to attack as on the weight of the evidence.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Trespass to try title by Mrs. Maggie Collins and others against T. T. Megason. From a judgment for defendant, plaintiffs appeal. Reversed and remanded for new trial.

This suit was one of trespass to try title, brought by appellants, husband and wife, against appellee. The land sued for was the F. Hopkins survey of 177⅓ acres in Red River county. In their petition, filed April 28, 1919, appellants set up title in themselves by force of the statute of limitations of ten years. After disclaiming as to 30 acres of land, appellee, in his answer filed May 28, 1920, pleaded not guilty and set up title in himself by force of the five-year statute of limitations.

The special issues submitted to the jury were: (1) Whether appellant Mrs. Collins and those under whom she claimed had "had and held peaceable, adverse, and continuous possession of the land in controversy, cultivating, using, and enjoying the same for a period of ten years" before April 28, 1919, the date the suit was commenced. (2) Whether appellee "and those claiming under him" had had and held "peaceable, adverse, and continuous possession of the land, cultivating, using, and enjoying it, and paying all taxes due thereon under a deed or deeds duly registered" for a period of five years before said April 28, 1919. The jury answered both questions in the affirmative,

whereupon the court rendered judgment that appellants take nothing by their suit.

Moore & Hardison, of Paris, for appellants.

Robbins & Johnson, of Clarksville, and J. Q. Mahaffey, of Texarkana, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The contention made that the findings that appellants had acquired title to the land in controversy by force of the statute of limitations of ten years and that appellee had acquired title thereto by force of the statute of limitations of five years were in conflict with each other, and therefore that the latter finding did not warrant the judgment in favor of appellee, is not tenable when the findings are construed with reference to the testimony. The possession and use of the land by appellee under the deed he relied on commenced January 29, 1914, the date when that deed was made and filed for record, while the possession and use appellants relied on ceased several years before that date. Hence we think the trial court properly construed the findings as meaning that the title vested in appellants by force of the ten-year statute was devested out of them and vested in appellee by force of the five-year statute.

[2] The answer to another contention made, that the trial court erred when he instructed the jury that "peaceable possession," within the meaning of the statute of limitations, meant "such as is continuous and not interrupted by adverse suits to recover the estate," lies in the fact that the instruction was in the language of the statute defining such possession. Vernon's Statutes, art. 5680; Glover v. Pfeuffer, 163 S. W. 984.

[3] A special charge requested by appellant would have instructed the jury, had it been given, to find against appellee on his plea of limitation if they believed appellee during the year 1915 stated to appellant Mrs. Collins that he knew her father's heirs owned the land, or if they believed appellee, during said year, made any statement to the effect that he did not claim the land adversely to her or to said heirs. The refusal of the charge is the basis of appellants' fourth assignment of error.

There is ample authority for the proposition that "interruption" (quoting from 2 C. J. 101, 102, 136, where the cases are collated) "of the continuity necessary to acquire title by prescription occurs when the adverse claimant recognizes the title of the disseisee," and for the proposition that the possession of such a claimant on such recognition "ceases" (quoting further) "to be adverse, no matter how hostile it may previously have been, and limitation does not again begin to run against the person whose

title is acknowledged until the claimant repudiates his title."

[4] There is also authority for saying, when the pleadings and testimony make such an issue, it is error to refuse a requested correct special charge embodying the propositions set out above when the cause is submitted to the jury in a general charge. Hurley v. Lockett, 72 Tex. 262, 12 S. W. 212. And see Eldridge v. Parish, 6 Tex. Civ. App. 35, 25 S. W. 49.

Acquiescing in the correctness of the authorities referred to, whether the assignment should be sustained or not depends on the answer which should be made to two questions:

[5] First. Did the pleadings and the testimony in the instant case make such an issue? The answer, we think, should be in the affirmative. Appellants, in a supplemental petition in reply to appellee's plea setting up the statute of limitations, alleged that the latter—

"at different times subsequent to the date of this alleged claim to said land and to his entry thereon admitted that he did not have title to said land and admitted that the same belonged to the plaintiff, Mrs. Maggie Collins, and to those through whom she claims title; and plaintiff says that since the time that the defendant has made said admissions, if he thereafter adversely claimed said land to the plaintiff, such claim has not existed for such a length of time as to support his said plea of limitation."

And appellant Mrs. Collins testified that in May, 1915, having been informed that appellee was on the land and was claiming to own it, she went to see him about it, "with a view of making a compromise of the matter without a lawsuit," and that he then stated to her he knew the "land belonged to her father [who was W. B. Jones], and entered into an agreement with her whereby he undertook to pay her rent and for timber he had cut from the land and move off of same in the fall of that year, and whereby she undertook to pay him for improvements he had placed thereon."

[6] Second. Was the refused charge a correct one when considered with reference to the pleadings and the testimony of Mrs. Collins? If it was not, it was not error either to refuse it or to fail to prepare and give a correct charge in lieu of it, for the court, with reference to the issue to which it was applicable, correctly instructed the jury that "adverse possession" meant "an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The rule is that when the court instructs the jury with reference to an issue, and the instruction is correct so far as it goes, it is not error to refuse an incorrect requested special charge intended to instruct them further with reference to such issue.

Landrum v. Thomas, 149 S. W. 813; Express Co. v. Parcarello, 162 S. W. 927; Allen v. Allen, 128 S. W. 697.

The writer thinks the requested special charge was substantially correct, tested by the pleadings and testimony set out above, and that it was reversible error to refuse it; but the other members of the court think it was erroneous, in that had it been given it would have, in effect, advised the jury the trial court was of opinion appellee, when he stated to Mrs. Collins, if he did, that "I know" (quoting from her testimony) "it is your father's land," meant he knew "the Jones heirs" (quoting from the charge) "were the owners of said land." Notwithstanding the declaration of appellee, as Mrs. Collins stated it, was that "I know it is your father's land," the majority think the jury had a right to find, if they believed appellee used the words Mrs. Collins testified he used, he meant he knew her father (who died long before the time she said the declaration was made) owned it during his lifetime. I agree, if the jury reasonably, under the circumstances of the case, might have so found, the special charge was subject to the objection that it was on the weight of the evidence, and therefore that it was not error to refuse it. But it seems to me the jury reasonably could not have said appellee meant that, in view of the fact that appellee knew when he made the declaration, if he did make it, that Mrs. Collins' father had been dead for many years. Keeping that in mind, I think the jury reasonably could not have construed the language as meaning anything else than that appellee knew when he made the declaration, if he made it, that Mrs. Collins' father's heirs then owned the land.

[7] Appellants insist that the testimony did not warrant the finding by the jury that appellee's possession of the land was "continuous" for the length of time necessary to vest the title in him by force of the five-year statute of limitations. The testimony relevant to the contention made was, substantially, that the deed under which appellee claimed was recorded January 29, 1914; that appellee did not live on the place during that year, but he and his tenant, Adams, during that year, planted and cultivated about 35 acres of it in "cotton, corn, potatoes, and such other crops" as were grown in the locality in which the land was situated; that appellee moved to the place about January 1, 1915, lived there until the fall of that year, built a house thereon, and with his tenant planted and grew the same kind of crops thereon; that Bruce Collins moved to the place in January, 1916, as appellee's tenant, planted and grew like crops thereon, and moved off of it the last of October, 1916; that G. W. Nutt lived on the place in 1917, and until the fall thereof, as appellee's tenant, growing the same kind of crops; that

appellee himself moved to it in January, 1918, and lived on it until the fall of that year, and that he and his tenant grew the same kind of crops thereon; that J. L. Bishop moved to the land before appellee gathered the crops he grew in 1918, and lived on and cultivated it in 1919, but whether as appellee's tenant or not did not appear except from the testimony of the witness W. B. Megason, who said:

"Tom Megason [appellee] has been cultivating the land since 1912, either in person or through his tenants."

We think the jury had a right to conclude, from the testimony of the witness W. B. Megason just quoted, that Bishop was appellee's tenant. If they had, then the breaks shown in the possession relied upon were only such as were shown by the testimony that appellee moved off of the land in the fall of 1915 and that Bruce Collins did not move to it until January, 1916; that the latter moved off of it the last of October, 1916, and that Nutt did not move to it until 1917 and moved off in the fall of that year. We think the jury had a right to consider, in determining the question, the character of the crops grown and the time when same were usually harvested in the locality of the land, and to conclude that the breaks shown in the continuity of the possession were no greater than was reasonably required for the change of tenants, and therefore that the possession was "continuous," within the meaning of the statute.

"It is doubtless true," said the Supreme Court in Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265, "that the uses to which land is put may be considered in determining whether or not intervals between the occupancy of tenants were only such as may be considered as the time reasonably required for the change. When yearly crops are raised it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation for another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is being used."

And see Bayle v. Norris, 134 S. W. 767. The judgment is affirmed.

On Motion of Appellants for a Rehearing.

[8] After considering the record further in the light of the motion, the members of this court all agree that it should not be held that the refused special charge which, had it been given, would have instructed the jury to find against appellee's plea setting up the statute of limitations, if they believed that in 1915 he told appellant Mrs. Collins he did not claim the land as against her and other heirs of her father, was an incorrect one, and hence that it was reversible error to refuse it. Therefore the judgment

heretofore rendered affirming the judgment of the trial court will be set aside, and the judgment of that court will be reversed and the cause will be remanded for a new trial.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes