BOY et al. v. McDOWELL. (No. 2011.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 13, 1918. Rehearing Denied Nov. 28, 1918.)

1. ADVERSE POSSESSION ⬸66(2) — NOTORIOUS POSSESSION.

An encroachment upon the land of another, due solely to a mistake in the location of the true boundary, is inconsistent with a claim of ownership to any portion of the land beyond the limits of the inclosure.

2. ADVERSE POSSESSION ⬸85(1) — PRESUMPTIONS—CLAIM OF TITLE.

Possession of premises usually carries with it the presumption of a claim of title.

3. ADVERSE POSSESSION ⬸100(1) — POSSESSION UNDER DEED.

When a deed is the basis of possession of land, it defines the extent of the hostile claim.

4. ADVERSE POSSESSION ⬸28—HOSTILE POSSESSION—NECESSITY.

One of the essentials required to perfect a title by limitation is that the adverse claim must be open and notorious in order to inform the true owner that his title is contested.

5. ADVERSE POSSESSION ⬸66(2) — HOSTILE POSSESSION.

An encroachment upon the land of another, due solely to a mistake in the location of the true boundary, may be converted into an adverse claim to land beyond the inclosure sufficient to mature into a title by limitation by acts showing a hostile intent, such as actual notice to the owner that legal title to the entire tract was claimed.

Appeal from District Court, Cass County; H. F. O'Neal, Judge.

Suit by J. M. McDowell against Mabe Boy and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Turner & Smitha and T. N. Graham, all of Texarkana, for appellants.

O'Neal & Allday, of Atlanta, for appellee.

HODGES, J. Claiming to be the owner of the Gilbert survey of 63 acres situated in Cass county, the appellee instituted this suit in the form of an action of trespass to try title against the appellants. The contest was mainly between him and the appellant Mabe Boy, under whom the appellant R. W. Lewis claims. The evidence shows that the principal portion of the Gilbert survey lies between the Stevenson on the north and the Downey on the south, both of which are older surveys than the Gilbert. The appellee, McDowell, relies for title upon a purchase and conveyance from W. C. Henderson in 1902, and adverse possession and payment of taxes thereunder for more than five years before this suit was filed. The appellant Boy claimed under a conveyance from Womack & Son made in 1900. At the time these conflicting deeds originated, the Gilbert land was uninclosed. The Downey survey consisted of 177 acres, and in 1895 had been divided between its respective owners by a line running north and south. Vaughan, the father-in-law of the appellee, owned 100 acres on the west side of the Downey, and Stewart 77 acres on the east side. There appears to be no controversy about the true location of the south boundary line of the Downey, but the location of the north boundary line could not be fixed except by a survey. Many years before this suit originated, the owners of the Downey caused a survey to be made, and marked upon the ground a line which they then believed was the boundary line between it and the Gilbert; and this line seems to have been regarded as the true division line until some time in 1904. Vaughan died in the year 1904, and the same year the appellee acquired the interest of the Vaughan heirs in the 100 acres in the Downey survey. At that time there was a fence running along the line formerly established as the north line of the Downey, which had been placed there by Vaughan. Some time after the appellee acquired the Downey land, he caused another survey to be made in order to locate the division line between the Gilbert and the Downey. This could only be done by running according to course and distance from the undisputed south boundary line of the Stevenson or the well-recognized south boundary line of the Downey. The survey resulted in locating another line several varas south of that which Vaughan had regarded as the true boundary between the Downey and the Gilbert. According to the line last run, the appellee, McDowell, had inclosed eight or ten acres of the Gilbert tract; that was the beginning of the controversy between him and the appellant Boy. The appellee testified that his father-in-law, Vaughan, owned the Downey land before he moved onto it; that there are about nine acres of the Gilbert under his fence, four or five of which are in cultivation. He first discovered that this inclosed land was a part of the Gilbert in the fall of 1904. He had paid taxes on the entire Gilbert tract since 1902. All of the land in the inclosure had been cut over; but, on account of its being low and flat, all had not been put in cultivation. He had used and occupied that land every year since, and had also sold timber off the other portions of the Gilbert tract. He admitted, however, on cross-examination, that the fence had been put where it then was by Vaughan under the impression that it was the true boundary line between the Downey and the Gilbert surveys.

The appellee's title to the Downey was undisputed, but the appellant Boy claimed ex-

clusive ownership of the Gilbert. It appears that in 1908 he instituted a suit in the district court of Cass county against the appellee for the purpose of recovering the Gilbert tract, together with rents and damages. That suit remained upon the docket of the district court of Cass county for nearly five years, and was then voluntarily dismissed by the appellant Boy.

In the trial of this case in the court below, a verdict was rendered in favor of the appellee, McDowell, for the land; and it is from that judgment that this appeal is prosecuted. The only errors assigned are, in substance, that the evidence does not support the verdict.

It is contended: First, that McDowell never had possession of any portion of the Gilbert survey; and, second, that if it should be held that he did have possession of a portion of that survey, such possession was not adverse within the meaning of the statute of limitations. There was ample testimony to support the finding that McDowell had inclosed about nine acres of the Gilbert survey, and that he had been cultivating and using the greater portion of that inclosed land for more than five years before the institution of this suit. We deem it unnecessary to discuss in detail the testimony of the witnesses upon that issue. While it was conflicting, yet there is sufficient to support the finding involved in the jury's verdict.

[1-5] The contention that McDowell's ownership was not notoriously adverse is based upon the proposition that, his occupancy having originated in a mistaken location of the north boundary line of the Downey, his title by limitation would at most be restricted to the land which he had actually inclosed. In support of that proposition we are referred to the case of Holland v. Nance, 102 Tex. 177, 114 S. W. 346, and others of similar import. In that case it was held that an adverse claim based upon the mistaken location of a boundary line, and which resulted in an encroachment of a few feet upon the land of an adjoining owner, was not sufficient, as a matter of law, to establish the essentials necessary to constitute a title by limitation. In Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153, Judge Williams, after pointing out the controlling facts in Holland v. Nance and other similar decisions, says:

"The facts were held to present a question of law, and not one of fact for the jury. It must be kept constantly in mind that, in applying a proposition like that, the facts of particular cases must be carefully regarded, and that additional facts may easily take the question, whether the evidences of possession and the adverse claim were sufficiently certain and unequivocal to give notice to reasonably diligent owners, out of the province of the court and into that of the jury."

It seems that in the cases referred to the decision of the court turned on the sufficiency of the evidence to show a notice to the true owner of the adverse claim relied upon. An encroachment upon the land of another, due solely to a mistake in the location of the true boundary, is inconsistent with the claim of ownership to any portion of the land that lies beyond the limits of the inclosure. Possession of premises usually carries with it the presumption of a claim of title, and in that sense operates as notice to the true owner that his title is disputed. When a deed is the basis of the possession, it defines the extent of the hostile claim. But this presumption is one of fact, and may be rebutted by proof that the possession is not adverse, or that it was due to a mistake in locating a boundary line, and that there was no intention on the part of the trespasser to claim beyond the limits of his actual inclosure. When possession begins in this manner, it would be unfair to permit the intruder, in order to claim the benefits of the statute of limitations, to show that he had secretly altered his intention and had for more than the statutory period quietly nursed the design to claim as his own all of the land which the character of his possession would permit. One of the essentials required to perfect a title by limitation is that the adverse claim must be open and notorious, in order to inform the true owner that his title is contested. But it does not follow that a possession unaccompanied at the beginning by any hostile intent, or one which is limited to the actual inclosure placed by mistake upon the premises, may not be thereafter converted into an adverse claim sufficient in the course of time to mature into a title by limitation beyond the amount actually inclosed. One whose possession originated without a hostile intent, or which was accompanied by a claim limited to the boundaries of the land actually inclosed, is not required to abandon his possession and then renew it under an adverse claim before he can put in operation the statute of limitations. Udell v. Peak, 70 Tex. 547, 7 S. W. 786; Carter v. Lagrange, 60 Tex. 636; Word v. Drouthett. 44 Tex. 370; Bryson v. Boyce, 41 Tex. Civ. App. 415, 92 S. W. 820; Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275. The notoriety required may be supplied in other ways. In this case the actual notice which the evidence shows was given to the appellant Boy by the appellee that the latter was claiming the entire Gilbert tract under his deed was just as effective in starting the running of the statute as if the appellee had first abandoned his possession and then renewed it to an equal extent under an adverse claim. The statute in this instance began to run in the appellee's favor, not from the time the land was inclosed or his posses-

sion began, but from the time he gave actual notice to the appellant Boy that he was claiming the entire tract under his deed from Henderson. This occurred more than five years before this suit was filed. There appears to be no dispute about the record of the appellee's deed and his payment of taxes for the period required by the statute.

We are therefore of the opinion that the appellee proved upon the trial a title perfected by limitation, and the judgment is affirmed.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes