**YOUNG v. CITY OF LUBBOCK.**

No. 5038.

Court of Civil Appeals of Texas. Amarillo.
June 5, 1939.

Rehearing Denied June 26, 1939.

Charles Nordyke, of Stephenville, for appellant.

Bradley & Wilson, of Lubbock, for appellee.

FOLLEY, Justice.

This suit was filed by the appellant, F. F. Young, against the appellee, the City of Lubbock. The first count of appellant's petition was in the form of an action in trespass to try title to recover the title and possession of the West 60 feet of Lots 18, 19 and 20 in Block 1, of the Pickett & Penney Addition to the City of Lubbock in Lubbock County, Texas, and in addition thereto a strip of land nine feet wide extending north and south across and adjacent to the west end of said lots. The second count of the petition was a plea of adverse possession seeking title to the property under the ten years statute of limitations. Vernon's Ann.Civ.St. art. 5510.

The appellee disclaimed as to the west 60 feet of Lots 18, 19 and 20, but as to the strip of land nine feet wide extending across the west end of the lots the appellee pleaded a general denial and not guilty.

Upon a trial without a jury the court found that the only property in controversy was the nine foot strip of land extending across and adjacent to the west end of Lots 18, 19 and 20, which in the year 1909 had been dedicated to the public use as an alley of the City of Lubbock; that the appellant was claiming such land by limitation and not by deed; that appellant had failed to show such adverse possession of such alley as would entitle him to recover upon his plea of limitation in that his claim was not inconsistent with and hostile to the claim of the appellee; that there was no exclusive possession of such alley by the appellant and that his claim thereto was not adverse but subservi-ent to appellee's claim. The trial court thereupon rendered judgment that the appellant take nothing by his suit, from which judgment this appeal is predicated.

The substance of the attack in this court upon the judgment rendered in the trial court is the alleged insufficiency of the evidence to support the judgment.

Block 1 of the Pickett & Penney Addition to the City of Lubbock is subdivided in the original plat into twenty lots, ten lots facing west and ten facing the east, and an alley ten feet wide running north and south through the middle of the block. The numbering of the lots begins with number one in the northwest corner of the block and ends with number twenty in the northeast corner; that is, from 1 to 10, inclusive, are on the west side of the block, from 10 to 20, inclusive, are on the east side, and Lots 18, 19 and 20 being in the northeast corner of the block. These lots are 140 feet long from the street on the east to the alley in the middle of the block. The block is adjacent on the north to Nineteenth Street. By a deed of the date of February 1, 1925, the appellant purchased the west 60 feet of Lots 18, 19 and 20, leaving 80 feet of said lots on the east thereof. At the time the west 60 feet of these lots were purchased by the appellant there was a house thereon facing Nineteenth Street on the north. At that time there was a fence around the property on the west, south and east, but none on the north at the front of the property. It is uncontroverted that at that time, and at all times succeeding, the west fence included about nine feet of the ten foot alley adjacent to the property. In other words, the fence began at a point adjacent to Nineteenth Street on the west side of the alley and went south to a point even with the south line of Lot 18, then traversed the alley and followed the south line of Lot 18 to approximately the southeast corner of the appellant's property, and then north along the east boundary to a point adjacent to Nineteenth Street.

Sometime in the fall of 1925, after the appellant purchased the property, he moved on the premises and occupied the same with his family to the date of the trial, a period of about thirteen years. The testimony of the appellant was to the effect that he used and occupied the enclosed alley as a part of his yard; that he planted grass and flowers on the nine foot strip of land; that he plowed it and sowed it; that he also planted some rhubarb and

asparagus thereon and cared for the plot of ground just as he did the remainder of his yard; that no one else ever used the strip of land or claimed or asserted any interest therein; that such land was never during his tenure used by vehicles for travel; and that never during such thirteen years did any one, except himself and his family, use or occupy the land. He further testified that the sewer line of the City of Lubbock entered the block on the south and came up the alley to a point a short distance from his south fence across the alley where it stopped and that he built his own sewer line from his house to empty into the City's sewer south of his property line. The City's sewer did not enter the nine foot strip of land in the alley in question.

■ The above testimony of the appellant is uncontroverted by any other evidence in the record. However, the appellee seeks to justify the judgment of the trial court chiefly on the theory that some general easements granted by the City of Lubbock for public utilities to use the streets and alleys of the City deprived the appellant of such exclusive possession of the alley as was necessary to establish adverse possession. The testimony discloses that the West Texas Utilities Company had a line of electric power poles running down the alley through the block, which poles were there before the appellant bought the property. The telephone company had a telephone pole within the strip of land presumably at the time the appellant bought the property, but about two months before the trial of this case such pole was removed and placed just west of the fence outside of the enclosure. Sometime about 1927, the exact date being unrevealed, the West Texas Gas Company installed a gas line through the alley, which installation, the appellant testified, was with his permission. Gas meters were shown to have been situated in this portion of the alley at the time of the trial, but as to how many there were and to whom they belonged, the record is silent. The City Manager of Lubbock testified that sometime about 1927 the City granted a franchise to the West Texas Gas Company to use all the streets and alleys of Lubbock in installing gas lines. He also testified that the City granted a franchise to the Southwestern Bell Telephone Company to put in telephone lines in all the streets and alleys of the city. Although the date of this franchise was not shown, since the telephone line was in the alley when the appellant bought the property it may be presumed that the franchise antedated appellant's deed to the property. There was no express showing that the West Texas Utilities Company was ever granted a franchise, however, from the testimony as a whole the presumption is that if such company had a franchise it was granted prior to appellant's purchase of the property. There is no testimony as to any use made by these utility companies of the alley in question other than that their lines traversed the alley. It is not contended by the appellee that these companies had any rights in the alley other than easement rights. We think the rule is that "to render possession exclusive, it is not necessary to preclude the exercise of an easement by a private person." 2 C.J.S., Adverse Possession, p. 568, § 51. "Possession may be exclusive notwithstanding the land is subject to rights which are mere easements and not things in possession." 2 C.J.S. Adverse Possession, p. 568, § 51; Barker v. Publishers' Paper Co. et al., 78 N.H. 160, 97 A. 749.

■ It is our opinion that the testimony in this case overwhelmingly establishes the conclusion that the appellant had exercised exclusive possession of the nine foot strip of land adjacent to his lots for a period of more than ten years prior to the filing of this suit. In view of the circumstances of this case, we think the fact there was no fence on the north side of appellant's property enclosing the alley at such point, is unimportant. This court will take judicial knowledge of the fact that in most modern cities front yard fences are exceptions rather than the rule. Except for the absence of a fence on the north the land in question was otherwise enclosed. "While an inclosure of land is decisive proof of possession, it is not the only evidence of the fact, and many cases hold that an inclosure is not essential to adverse possession." 2 Tex.Jur. 90, par. 46. In one of the early cases of this state, Richards v. Smith et al., 67 Tex. 610, 4 S.W. 571, 573, the Supreme Court of this State, speaking through Judge Stayton, said:

"We do not think an actual inclosure, by fence or otherwise, necessary in all cases to give an exclusive possession.

"The character and situation of the land, and the uses to which it is adapted, and may be and is actually put, must be con-

sidered in determining whether an occupation is exclusive or not. To give title by limitation there must be an adverse claim and exclusive possession or occupation of the thing for the length of time and under the circumstances prescribed by the statute. * * * The facts must clearly show the adverse claim, and from its nature, as well as an exclusive possession, of which an inclosure substantial and permanent in character, accompanied with such use as the land is adapted to, is often the most satisfactory evidence.

"When the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it adverse to the claim of all others, and this is accompanied by an actual possession, exclusive in its character, then limitation will run in favor of the persons so asserting adverse claim, and enjoying an exclusive possession from the time such exclusive occupancy began, whether the land be inclosed or not."

It seems to us that the appellant did everything he could have done to put the City of Lubbock and the public on notice that whatever rights the City or the public had in the property were being intentionally invaded by the appellant. The land was openly used for the purpose for which it was suitable. We can conceive of no use that such land could have been put by the appellant other than that to which it was subjected. There was no other use to which it was adapted. For thirteen years or more the alley was closed by a fence at the south line of appellant's property, which was the rankest kind of trespass since it prevented traffic of any sort from going through the alley from either direction and possibly prevented the City of Lubbock from laying its own sewer line beyond such obstruction. Any one passing the alley could have seen this obstruction by the exercise of the slightest observation. With an equal amount of observation any person passing near the property could have seen the fence on the west side enclosing the alley and the grass and flowers of the appellant growing upon the land. From the undisputed testimony the land in controversy was being cared for all these years as a part of appellant's yard and in the same manner as the other portion of his yard embraced in his deed. It is also uncontroverted that the land was never used for any purpose by the City or the public during appellant's occupancy. As

to how long the alley had been fenced prior or to appellant's occupancy, the record is silent. This question is perhaps immaterial in this case since the appellant occupied the land for a period of more than ten years, however, the testimony fails to reveal that this portion of the alley was ever used at any time after its dedication in 1909 for the purpose for which it was dedicated.

Under all the above facts and circumstances it is our opinion that the occupancy of the appellant was sufficient to give unequivocal notice to the City of Lubbock, to the public and to all persons interested, that the appellant was asserting an adverse claim to the land, exclusive in its nature and hostile to the whole world. There is no intimation from the evidence that the appellant at any time during his occupancy entertained any intention with reference to the land other than to appropriate it and hold it as a part of his other property. His occupancy was open, notorious, manifest and unmistakable, and was sufficient to meet the requirement announced in the language that the disseisor "must unfurl his flag upon the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." 1 Am. Jur. 865, par. 130.

 Moreover, although the point has not been raised by the appellant, it is our opinion that fundamental error is apparent in the record before us. As has been stated, the appellee filed a disclaimer of any interest in the west sixty feet of Lots 18, 19 and 20, basing its defense solely upon whatever rights it had to the nine foot strip of land in the alley adjacent to such lots. Regardless of the disclaimer filed by the City to the lots in question the court rendered judgment that the appellant take nothing by his suit, which, in effect, denied the appellant recovery for that portion of the property to which the appellee disclaimed any interest. This action upon the part of the court constituted fundamental error. Snyder v. Compton, Tex.Civ. App., 29 S.W. 73; Herring v. Swain, 84 Tex. 523, 19 S.W. 774; Investors' Utility Corp. et al. v. Challacombe, Tex.Civ.App., 39 S.W.2d 175, and authorities therein cited; Houston Oil Co. of Texas v. Village Mills Co., Tex.Com.App., 241 S.W. 122; Periman Oil Co. v. Smith et al., Tex.Sup., 73 S.W.2d 490, 111 A.L.R. 1152.

■ 422

■■ So far as the appellant's cause of action is concerned this case was fully developed in the trial court. Although appellant's claim was based chiefly upon his own testimony, still, there is nothing in the record to cast any suspicion on his evidence. All the material facts to which he testified were open and visible about the premises, and which, if untrue, the appellee could easily have controverted. This the appellee failed to do. The physical facts in the case themselves, about which there is no controversy, afford some corroboration of the appellant's testimony. Under such circumstances the trial court was unauthorized to disregard the testimony of the appellant although he was an interested witness. M. H. Thomas & Co. v. Hawthorne, Tex.Civ.App., 245 S.W. 966, writ refused. Under article 5517, R.C.S. of 1925, and the authorities construing it, title to an alley in a city may be acquired by limitation. It is our opinion that the undisputed facts show that the appellant's occupancy was sufficient under the law to establish his title to that portion of the alley within his enclosure. Thompson et al. v. Richardson, Tex.Com.App., 221 S. W. 952. Therefore, the judgment of the trial court is reversed and judgment will be here rendered that the appellant recover of and from the appellee the title and possession of the west sixty feet of Lots 18, 19 and 20 in Block 1 of the Pickett & Penney Addition to the City of Lubbock, Lubbock County, Texas, together with the strip of land nine feet wide extending across and adjacent to the west end of such lots, as prayed for in appellant's petition.

: Reversed and rendered.

On Motion for Rehearing.

The appellee has filed a motion for rehearing in which the chief complaint is that we erred in rendering judgment for the appellant for that portion of the alley in controversy because the appellant did not testify that he had claimed any character of title to this land or possessed the same under any claim of ownership.

■ It is our opinion that his open, hostile, exclusive and continuous appropriation of the land during the thirteen years preceding the filing of this suit carries with it a far more potent conclusion that his appropriation of the land was "commenced and continued under a claim of right inconsistent with and hostile to the claim of another" than would have been

his direct testimony to such effect, especially when such conduct in appropriating the land is in itself unmistakable proof of his "claim of right" in the absence of some evidence indicating that he held the land in subordination to the title of the real owner.

In Boy et al. v. McDowell, Tex.Civ. App., 207 S.W. 937, 938, writ dismissed, it is said: "Possession of premises usually carries with it the presumption of a claim of title, and in that sense operates as notice to the true owner that his title is disputed."

■ In the case of Craig v. Cartwright, 65 Tex. 413, 424, the Supreme Court of this State, in discussing what constitutes an adverse claim, announced the following rule: "Possession, with the exercise of such rights as pertain to an owner alone, must be deemed sufficient evidence of adverse claim, in the absence of some evidence indicating that it is held in subordination to the title of the real owner."

■ Again, in Thompson et al. v. Richardson, supra [221 S.W. 953], we find the following language from the Commission of Appeals of Texas: "Under the ten years' statute, no deed is necessary; no muniment of title is required; and the possession in compliance with the terms of the statute, in the absence of evidence to the contrary, carries with it the presumption that it is held under a claim to the land."

■ Also, in the case of Cox et al. v. Sherman Hotel Co., Tex.Civ.App., 47 S.W. 808, 809, in discussing the significance of the term "under a claim of right" as used in the statute (article 5515 R.C.S.) defining adverse possession, the court said: "It is not meant by the expression 'under a claim of right' that the party in possession should make any claim to ownership of the land, otherwise than by a visible, hostile, exclusive, and continuous appropriation of the land. One may enter upon land as a naked trespasser, knowing that he has no title whatever, and intending to acquire title by limitations of 10 years; and if he continues in peaceable adverse possession for 10 years, cultivating, using, or enjoying the same, he will thereby acquire title to the land. It is the character of his possession, and not the claim of title or ownership which he may assert, that is made the basis of the operation of the statute of limitations."

Under these authorities it is our opinion that appellee's contention in this respect is without merit, and its motion for rehearing is overruled.